[629 NYS2d 512]

In the Matter of RICHARD W., Respondent, v ROBERTA Y., Appellant.

Third Department, July 13, 1995

APPEARANCES OF COUNSEL

*Arroyo, Copland, Rosenbaum & Flaherty,* Albany *(Shawn D. Flaherty* of counsel), for appellant.

*Richard W.,* Esperance, respondent *pro se.*

## OPINION OF THE COURT

YESAWICH JR., J.

Petitioner maintains that he is the father of a daughter born to respondent on April 29, 1993. Respondent, who married her present husband, William Y., in November 1992, admits to having had unprotected sexual intercourse with both petitioner and William on different occasions near the probable date of conception. Family Court, following a hearing, found respondent's admission that she had engaged in sexual relations with petitioner at the relevant time, coupled with results of a human leucocyte antigen test showing a 99.53% probability that petitioner is the child's father,* sufficient to overcome the presumption of legitimacy that arises when a child is born to a married woman *(see, Matter of Lane v Eno,* 277 App Div 324, 325), and entered an order of filiation declaring petitioner to be the child's father. Respondent appeals.

Although neither party has raised the issue, petitioner's claim, which was promptly pressed, cannot fairly be resolved without first having William joined as a party respondent. Historically, neither the child whose paternity was at issue nor the mother's husband has been deemed a necessary party to a paternity proceeding *(see, Commissioner of Pub. Welfare of City of N. Y. v Koehler,* 284 NY 260, 267). However, this principle was premised upon the fact that, when it was embraced a paternity proceeding had no effect on the child's

---

* There is no indication that any scientific test was performed to determine whether William could be the child's father.

legal status, but was intended only as a means of securing support *(see, supra,* at 266-267). In the interim, however, the Legislature amended Family Court Act § 522 to include "a person alleging to be the father" as a proper petitioner to commence a paternity proceeding (L 1976, ch 665, § 6, eff Jan. 1, 1977). As a result of this amendment "and numerous other laws conferring rights and benefits flowing from an order of filiation" *(Matter of Sharon GG. v Duane HH.,* 95 AD2d 466, 467-468, *affd* 63 NY2d 859), the consequences of a proceeding of this type—both for the child and for the involved adults— are now considerably greater than they have been in the past *(see, Matter of Cathleen P. v Gary P.,* 63 NY2d 805, 807; *Matter of Kordek v Wood,* 90 AD2d 209, 213). This, along with the development of accurate scientific methods for demonstrating the nonpaternity of a large majority of males who are not actually the father *(see, Matter of Department of Social Servs. [Sandra C.] v Thomas J.S.,* 100 AD2d 119, 122-123; 1 Schatkin, Disputed Paternity Proceedings § 8.08 [4th rev ed]), has made it more realistic to view a paternity proceeding as a means of actually and conclusively determining the identity of a child's biological father *(see, Matter of Commissioner of Social Servs. [Celia D.] v Hector S.,* — AD2d —, 1995 NY Slip OP 05763 [1st Dept, June 13, 1995]; *Matter of Gorton v Gorton,* 123 Misc 2d 1034, 1036).

Accordingly, where, as here, a mother's husband has been a substantial presence in the child's life and desires to continue to exercise parental rights, the need for joining him, as a party whose interests "might be inequitably affected by" the resulting order of filiation (CPLR 1001 [a]), is manifest and may be ordered by the court on its own motion *(cf., Matter of Tyrone G. v Fifi N.,* 189 AD2d 8, 15-16; *Albert C. v Joan C.,* 110 AD2d 803, 804).

Moreover, with the joinder of William as an "alleged father", the court can order him to submit to a blood test *(see,* Family Ct Act § 532 [a]; CPLR 3121 [a]), the results of which, if they exclude him as the child's father, will provide the clear and convincing evidence petitioner needs to rebut the presumption of legitimacy *(see, e.g., Ghaznavi v Gordon,* 163 AD2d 194, 195). And if William refuses to submit to the test, an adverse inference may then be drawn against him *(see, Fitzgerald v Tamola,* 199 AD2d 122, 123; *Matter of Joseph P.M. v Boyce R.,* 127 Misc 2d 931, 933-934). This is not to suggest that the presumption of legitimacy should not continue to govern when the truth cannot be known with reason-

able certainty (as, for example, if the blood test results do not rule out William as the child's father). But if the truth can be discovered, and equity does not demand otherwise, the presumption should not be utilized to perpetuate a falsehood (see, *Matter of Constance G. v Herbert Lewis L.,* 119 AD2d 209, 211, *lv dismissed* 70 NY2d 667).

Lastly, the joinder of William as a respondent will also serve the child's interest in having her paternity decided swiftly and finally, for a decision rendered in a proceeding in which he is not a party cannot bind him, and leaves open the possibility of a later order declaring him to be the father (see, *Matter of Tyrone G. v Fifi N.,* supra, at 14; *cf., Matter of Cathleen P. v Gary P.,* 63 NY2d 805, 808, *supra).*

Since the matter must be remitted, we deem it advisable to note our agreement with respondent's contention that, given the unique factual posture of this case and the serious consequences its resolution will have for the child, appointment of a Law Guardian to represent her interests would be judicious (see, *Matter of Commissioner of Social Servs. of City of N. Y. [Betzaida D.] v Lazaro F.,* 99 Misc 2d 408, 409-410; *cf., Matter of Leon L. v Carole H.,* 210 AD2d 484, 484-485; *Johannessen v Johannessen,* 148 AD2d 894, 895-896).

MIKOLL, J. P., MERCURE, CREW III and CASEY, JJ., concur.

Ordered that the order is reversed, on the law and the facts, without costs, and matter remitted to the Family Court of Albany County for further proceedings not inconsistent with this Court's decision.