# IN THE COURT OF APPEALS OF IOWA

No. 3-1174 / 13-0693
Filed February 5, 2014

**ROBERTO LEDESMA,**
      Petitioner-Appellant,

**vs.**

**DANIELA ESTRADA GUTIERREZ**
**and JUAN ANTONIO CISNEROS,**
      Respondents-Appellees.

_____

      Appeal from the Iowa District Court for Buena Vista County, Nancy L.

Whittenburg, Judge.


      The putative father of a child who was born into a marriage challenges the

denial of his petition to establish paternity.  **AFFIRMED.**


      Nicholas J. Brown of Dan Connell, P.C., Storm Lake, for appellant.

      John M. Murray of Murray & Murray, P.L.C., Storm Lake, for appellees.


      Considered by Doyle, P.J., and Tabor and Bower, JJ.

**TABOR, J.**

At issue in this case is the paternity of A.C., who is now four years old. A.C.'s biological father, Roberto Ledesma, challenges the district court's denial of his petition to establish paternity, custody, visitation, and support, and to terminate the rights of A.C.'s legally established father, Juan Cisneros. Ledesma contends the district court misapplied Iowa Code sections 600B.41 and 600B.41A (2009).

Because the district court properly treated Ledesma's petition as an action to overcome paternity under section 600B.41A and followed the supreme court's interpretation of that provision in *Callender v. Skiles*, 591 N.W.2d 182 (Iowa 1999), we affirm.

## I. Factual and Procedural Background

Daniela Estrada Gutierrez (Estrada) married Cisneros in February 2007.[1] During the marriage, Estrada had an intimate relationship with Ledesma. Ledesma was a family friend who emigrated from the same city in Mexico as Estrada and Cisneros. A.C. was conceived as a result of Estrada's extra-marital affair with Ledesma. Cisneros was not aware of the affair and believed A.C. was his child at the time of the birth in April 2009. Cisneros testified: "I saw him born. It's my child. . . . It was one of the biggest days of my life to see my child, to have the privilege to see a child born."

Ledesma went to the hospital the day after A.C. was born, believing the child was his, but did not say anything to Cisneros. During his occasional visits

---

[1] Estrada and Cisneros have a son who was born in 2002 and lives with relatives in Mexico. Estrada and Cisneros both provide financially for that child.

to Cisneros's apartment during A.C.'s first year, Ledesma became convinced the child resembled him.

Cisneros did not learn of A.C.'s true parentage until May 2010 when his wife took the child and left for Luverne, Minnesota, with Ledesma. Estrada was only with Ledesma for a week before she called her husband and asked him to come to Minnesota and bring her and A.C. back to Iowa. During the car ride home, Estrada revealed to Cisneros that she had a sexual relationship with Ledesma. Cisneros and Estrada decided to stay together and raise A.C. Cisneros testified they went to marriage counseling to help them "be stronger and to deal with this issue." Estrada and Cisneros had another child who was born in 2012.

On September 8, 2010, Ledesma filed his petition against Estrada seeking "Declaration of Paternity, Custodial Rights, Support and Visitation." Estrada answered, contending Ledesma waived his right to assert paternity because he "has known that the child has been raised by the Defendant and her husband since the child's birth, has allowed them to raise the child for two years and five months, and has not taken any action during that time to assert his alleged paternity rights."

On November 29, 2010, Ledesma filed a "Paternity Assay Report," to which Estrada consented. The report showed a 99.99% probability Ledesma was A.C.'s biological father.

On July 20, 2012, Ledesma amended his petition to add Cisneros as a party and to urge the court to terminate Cisneros's parental rights to A.C.

Estrada and Cisneros filed an amended answer and counterclaim, requesting Cisneros's parental rights to A.C. be preserved.

The district court held trial on October 11, 2012. After the trial, the guardian ad litem issued a report recommending preservation of Cisneros's paternity rights. The guardian ad litem observed that A.C. and Cisneros were closely bonded:

> The undersigned has personally witnessed the strong feelings that Juan has toward A.C. and believes that was reflected during his testimony. The undersigned is aware of nothing which would indicate those feelings are not reciprocated by A.C. toward his father. Observations of A.C. by the undersigned reflect that A.C. is comfortable is his home, with his father and the rest of his family and appears to have a strong and positive relationship with Juan.

Regarding Ledesma, the guardian ad litem pointed out he "did nothing during Daniela's pregnancy or the first year of A.C.'s life to establish his paternity." *See* Iowa Code § 600B.41(2)(e) (requiring the consideration of additional factors "relevant to the individual situation"). The guardian ad litem also noted that after Ledesma's brief foray to Minnesota with Estrada and A.C. in May 2010, he waited an additional four months to file his petition and "has seen A.C. on two brief occasions" since they were in Minnesota. The guardian ad litem found Ledesma "has never acted as a father to A.C. or provided him with anything." The report concluded it was not in A.C.'s best interest to disestablish Cisneros's paternity.

The district court denied Ledesma's petition on February 22, 2013. The court ruled Cisneros's established paternity should be preserved: "The stability of

A.C.'s life will be significantly affected by disestablishing Juan's paternity and this would not serve A.C.'s best interests." Ledesma appeals.

## II.    Standard of Review

We review paternity actions under Iowa Code chapter 600B for errors at law. *Callender*, 591 N.W.2d at 184. Likewise, we review the district court's interpretation of statutes for legal error. *Id.*

## III.    Analysis

Ledesma disputes the district court's interpretation of sections 600B.41[2] and 600B.41A.[3] He claims once the genetic testing showed a 99.99% probability that he was the biological father, paternity was established in him and the burden rested with Cisneros and Estrada to show he was not the father. Ledesma misconstrues the statutory procedure.

In *Callender*, our supreme court reviewed the raison d'etre of chapter 600B. *Id.* at 185 (finding provisions allowed judicial enforcement of "the

---

[2] Iowa Code section 600B.41(1), (5)(b) states:
> In a proceeding to establish paternity . . . the court . . . upon request of a party shall, require the child, mother, and alleged father to submit to blood or genetic tests.
> . . . .
> If the expert concludes that the test results show that the alleged father is not excluded and that the probability of the alleged father's paternity is ninety-five percent or higher, there shall be a rebuttable presumption that the alleged father is the father, and this evidence must be admitted.

[3] Iowa Code section 600B.41A(1) states:
> Paternity which is legally established may be overcome as provided in this section if subsequent blood or genetic testing indicates that the previously established father of a child is not the biological father of the child. Unless otherwise provided in this section, this section applies to the overcoming of paternity which has been established . . . by operation of law when the established father and the mother of the child are or were married to each other . . . .

recognized obligation of parents to support a child born out of wedlock and not legitimized"). The chapter anticipated enforcement proceedings could be initiated by the mother, or other interested person, or state authorities. *Id.* (interpreting section 600B.8). The legislature made blood tests available to assist in the paternity proceedings. *Id.* (noting under section 600B.41(5), the results of such tests can create a rebuttable presumption of paternity which can only be overcome by clear and convincing evidence).

In its 1999 decision, the *Callender* court also noted the legislature had recently amended chapter 600B "to provide for the filing of a petition, not to establish paternity, but to overcome paternity which has been previously established." *Id.* (citing section 600B.41A). As relevant here, the court explained section 600B.41A(1) applied when paternity had been legally established by operation of law based on marriage. *Id.* The *Callender* court defined "established father" as the husband of the mother at the time of the child's birth. *Id.* The court also clarified that while blood tests can *lead* to the establishment of paternity under section 600B.41, the tests do not *establish* paternity without a subsequent court order. *Id.*

Further, the *Callender* court concluded section 600B.41A violated the due process clause of the Iowa Constitution to the extent it denied a putative father the opportunity for a hearing in which he could try to overcome the paternity of the established father. *Id.* at 192. But once the putative father had been afforded procedural due process, the possibility remained that the district court could make a "substantive choice" that infringed on the putative father's

parenthood interest. *Id.* The court instructed that the substantive claim should be determined by looking to the best interests of the child. *Id.* (citing section 600B.41A(6)(a)(2)).

In this case, Iowa law deems Cisneros to be A.C.'s father by virtue of his marriage to Estrada. *See* Iowa Code § 252A.3(4). Contrary to Ledesma's argument, because A.C. has an established father, the blood tests do not place the presumption of paternity with Ledesma or the burden on Cisneros and Estrada. *See Callender*, 591 N.W.2d at 185.

The district court properly viewed Ledesma's action as one to overcome Cisneros's paternity under section 600B.41A, as that provision was explained in *Callender*. When genetic testing established Ledesma as the biological father, the district court could dismiss his action and preserve paternity in Cisneros only if: (1) Cisneros requested his paternity be preserved; (2) preserving paternity was in A.C.'s best interests; and (3) Cisneros requested, and the court decided, Ledesma's rights should be terminated. *See* Iowa Code § 600B.41A(6). All three steps were completed in the instant case.

The district court also appropriately examined the best-interest factors under section 600B.41A.6(a)(2):

> (a) The age of the child.
> (b) The length of time since the establishment of paternity.
> (c) The previous relationship between the child and the established father, including but not limited to the duration and frequency of any time periods during which the child and established father resided in the same household or engaged in a parent-child relationship as defined in section 600A.2.
> (d) The possibility that the child could benefit by establishing the child's actual paternity.

   (e) Additional factors which the court determines are relevant
to the individual situation.

  A.C. was three years old at the time of the trial and had only known Cisneros as his father. The child had little contact with Ledesma, living with him for only one week in May 2010. The district court found nothing to show Ledesma had interacted with A.C. or developed any relationship with the child during that short custodial period.

  The court next considered Ledesma's timing in asserting his paternity. Although Ledesma realized he might be the biological father during Estrada's pregnancy, Ledesma chose not to assert his legal rights until September 2010. The court also noted Ledesma was "slow to correct the deficiencies in this action to proceed with the law." In addition, the court pointed out Ledesma did not try to establish a relationship with the child.

  As for the third factor, the court emphasized Cisneros provided for the child's prenatal care and has provided financial and emotional support since A.C.'s birth—even after Cisneros learned Ledesma was the biological father. The court found: "Since A.C.'s birth, Juan has executed all the duties, rights and privileges that are attendant to a parent-child relationship."

  Turning to the fourth factor, the court relied on the opinion of the guardian ad litem in finding no benefit to upsetting the stability in A.C.'s life by establishing paternity in Ledesma and disestablishing Cisneros's paternity. The court found Cisneros had a strong and positive relationship with A.C., while Ledesma had waited too long and did too little to forge a bond with his biological son. Finally,

the court found it relevant that Ledesma did not offer a nurturing environment for a young child in his current living arrangements.

We find no error of law in the district court's analysis of the statutory factors necessary for overcoming paternity in Cisneros, the established father. Outside of biology, Ledesma offered no convincing claim that disestablishing Cisneros's paternity would be in A.C.'s best interests. *See generally Callender*, 591 N.W.2d at 193 (Harris, J., dissenting) ("Family relationships do not rest exclusively on shared genes. A child puts down its family roots on the basis of environment, and the resulting ties deserve the law's protection.").

Finally, we decline to separately analyze Ledesma's claim concerning the doctrine of equitable parenting and the possibility of "dual fatherhood" based on his reading of *In re Marriage of Gallagher*, 539 N.W.2d 479 (Iowa 1995). The *Callender* court cited *Gallagher* for the proposition: "[W]e do not recognize any separate equitable parenting principles which would give a person outside a marriage the right to establish paternity." *Id.* at 186 (making clear equity only comes into play once the right to relief existed). Any separate analysis of equitable principles concerning the best interests of A.C. would be redundant of the district court's consideration of the factors listed in Iowa Code section 600B.41A.6(a)(2).

**AFFIRMED.**