**IN THE COURT OF APPEALS OF IOWA**

No. 14-0428
Filed May 29, 2014

**IN THE INTEREST OF A.L.,**
**Minor Child,**

**J.W., Father,**
**Appellant.**
_____

Appeal from the Iowa District Court for Webster County, Angela L. Doyle,

District Associate Judge.

A father appeals the termination of his parental rights to his child.

**VACATED, REVERSED, AND REMANDED WITH DIRECTIONS.**

Neven J. Conrad of Baker, Johnsen and Sandblom, Humboldt, for

appellant father.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant

Attorney General, Ricki Osborn, County Attorney, and Jordan W. Brackey,

Assistant County Attorney, for appellee State.

Douglas Cook, Jewell, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**VAITHESWARAN, P.J.**

A father appeals the termination of his parental rights to his child, born in 2009. He contends (1) the department of human services did not make reasonable reunification efforts, (2) the State failed to prove each ground for termination by clear and convincing evidence, and (3) granting an additional six months to prove himself is "only fair." All his arguments are partially premised on the State's failure to serve him with notice of the underlying child-in-need-of-assistance action. We find the notice issue dispositive.

*I.    Background Proceedings*

The State filed a child-in-need-of-assistance petition in March 2012, alleging two children would likely suffer harm at the hands of their mother and the presumed father, to whom the mother was married. In April 2013, the court issued a permanency order affording the mother and presumed father an additional six months to work towards reunification. Days later, the mother filed an "affidavit concerning paternity." She attested that someone other than her husband was the father of one of her children, A.L. She identified the person as "James" and further attested, his "whereabouts are unknown to me."

James was not served with the child-in-need-of-assistance petition, nor does the record contain an affidavit of diligent search. Eventually, the State filed a termination petition. The State had James served with the petition in December 2013. Counsel was appointed for James about five weeks later, and the termination hearing began about two weeks after the appointment. James appeared at the hearing but did not testify.

Following the hearing, the district court terminated James's parental rights on several grounds. This appeal followed.

## II. Notice

"'Notice of the hearing and an opportunity to be heard appropriate to the nature of the case is the most rudimentary demand of due process of law' in proceedings affecting parental rights to children." *In re S.P.*, 672 N.W.2d 842, 845 (Iowa 2003) (quoting *Stubbs v. Hammond*, 135 N.W.2d 540, 543 (Iowa 1965)). "Notice in child neglect and dependency proceedings is jurisdictional." *In re Hewitt*, 272 N.W.2d 852, 855 (Iowa 1978).

Notice is subject to a statutory as well as a constitutional test. *S.P.*, 672 N.W.2d at 846. We will begin and end with the statutory test, although some constitutional precedent bears on the analysis. *See id.*

The child-in-need-of-assistance statute provides that the State shall serve the child-in-need-of-assistance petition "in the same manner as for adjudicatory hearings in cases of juvenile delinquency as provided in section 232.37." Iowa Code § 232.88 (2013). Section 232.37, in turn, requires service "upon the known parents . . . of a child" and specifies that the service shall be "made personally by the sheriff" or, if the court determines personal service is impracticable, by certified mail. *Id.* § 232.37(1), (4). Hearings may not take place without a parent except if the parent "fails to appear after reasonable notification" or "if the court finds that a reasonably diligent effort has been made to notify the child's parent."

*Id.* § 232.38(1);[1] *see also id.* § 232.112(1) ("[N]otice [of termination petitions] may be dispensed with in the case of any such person whose name or whereabouts the court determines is unknown and cannot be ascertained by reasonably diligent search.").

A diligent search "is measured not by the quantity of the search but the quality of the search." *Qualley v. State Fed. Sav. & Loan*, 487 N.W.2d 353, 355 (Iowa Ct. App. 1992).

> While a reasonable search does not require the use of all possible or conceivable means of discovery, it is an inquiry that a reasonable person would make, and it must extend to places where information is likely to be obtained and to persons who, in the ordinary course of events, would be likely to have information of the person or entity sought.

*Id.*

The department conducted no search for James, diligent or otherwise, during the child-in-need-of-assistance proceeding. While the department was notified that James was the father of A.L. more than seven months before the termination petition was filed, its employee was unaware of any action that was taken to locate him while the child-in-need-of-assistance-proceeding was pending. Notably, the mother testified that James and his family had always lived in Fort Dodge, the same town she lived in and the same town in which the child-in-need-of-assistance action was pending. Even more notably, the Sheriff's office found James on the second try when it came time to serve him with the termination petition.

---

[1] Although this language does not appear in section 232.88 or 232.37, we believe the legislature's intent was to apply all notice requirements used in delinquency proceedings to child-in-need-of-assistance proceedings. *See* Iowa Code § 232.88.

The agency's inaction precluded James from being heard in the child-in-need-of-assistance proceeding and rendered the proceeding void as to him. *See S.P.*, 672 N.W.2d at 848.

James's appearance at the termination proceeding does not alter our conclusion. The appearance cannot be construed as a waiver of his right to notice of the underlying child-in-need-of-assistance action because he was not aware of that action. *See In re J.S.,* 386 N.W.2d 149, 152 (Iowa Ct. App. 1986) (noting father intervened in child-in-need-of-assistance proceedings and "acquiesced to the jurisdiction of the court for ten months"). James's lack of knowledge was verified by the district court in a colloquy with the mother. The court specifically asked her whether James indicated he "had any knowledge about the [child-in-need-of-assistance] proceeding." She responded, "[N]o, he just asked how his son was doing and if he could ever see his son."

Even if James had actual notice of the child-in-need-of-assistance proceeding, that fact did not obviate the need to provide formal notice, absent some participation by James in the proceeding. *See State v. Kaufman*, 201 N.W.2d 722, 724 (Iowa 1972) ("Actual notice . . . is no substitute for service of notice according to statute."); *see also Coe v. Armour Fertilizer Works*, 237 U.S. 413, 424 (1915) ("Nor can extra-official or casual notice, or a hearing granted as a matter of favor or discretion, be deemed a substantial substitute for the due process of law that the Constitution requires."). It is conceded that James did not participate in the child-in-need-of-assistance proceeding.

This brings us to *In re M.L.M.*, 464 N.W.2d 688, 690–91 (Iowa Ct. App. 1990), in which this court held that a father was entitled to notice of a child-in-

need-of-assistance action, but failure to provide notice did not mandate reversal where the father knew the whereabouts of the children, had abandoned or deserted them, and could not assume care of them in the reasonable future. If *M.L.M.* is read to require a parental showing that the termination petition likely would have been denied on the merits, we believe such a showing is inconsistent with due process precedent. In particular, the United States Supreme Court has rejected the notion that a person deprived of notice has to establish the existence of a meritorious defense. *See Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 86 (1988); *see also Coe*, 237 U.S. at 424 ("To one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits."). Such a showing is also inconsistent with the allocation to the State of the burden of proving the grounds for termination. Because James did not receive notice of the child-in-need-of-assistance proceeding, that proceeding was void as to him irrespective of whether he knew he had a child and had contact with the child. This is as true under the statutory notice test as it is under the constitutional notice test. *See S.P.*, 672 N.W.2d at 848.

For the same reason, James's failure to file a paternity action and seek custody of the child has no bearing on the notice issue. The State filed the child-in-need-of-assistance petition, and the State had the obligation to formally notify James of that filing once it received the affidavit of paternity, even if James

expressed no interest in the child and took no action to establish a relationship with the child. [2]  Absent such notice, the proceeding was void as to him.  *Id.*

While we are not convinced the merits should have been reached in *M.L.M.,* we recognize that they were.  Accordingly, we will briefly address the merits in this case.

### III.    Grounds for Termination

The district court concluded that James abandoned his child.  James contends abandonment was not proven.  On our de novo review, we agree.

Abandonment requires proof of "both the intention to abandon and the acts by which the intention is evidenced."  Iowa Code § 232.2(1).  Although James was aware he had a child, his paternity was not established, an order of support was not entered, and the child's mother testified she actively tried to keep James from her child.  She stated that he tried messaging her and she did not respond.  She also stated, "I have not wanted him in my son's life since he has been born."  In *M.L.M.*, in contrast, the father's paternity was established through legal procedures, and he was ordered to contribute to the support of the children—an order that he did not comply with.  464 N.W.2d at 689–90.  We conclude an intent to abandon the child was not established.

Section 232.116(1)(b) also provides that a court may order termination if there is clear and convincing evidence the child has been deserted.  Desertion is

---

[2] We recognize that parents may waive their constitutional liberty interests in a relationship with their child if they wait too long to assert them.  *See Huisman v. Miedema,* 644 N.W.2d 321, 326 (Iowa 2002); s*ee also Callender v. Skiles,* 591 N.W.2d 182, 192 (Iowa 1999).  The issue here, however, is one of notice to a putative parent in a State-initiated action that may ultimately lead to the termination of his fundamental right to parent the child.  As the Iowa Supreme Court stated in *Callender,* "Due process must be afforded when an individual is threatened by state action which will deprive the individual of a protected liberty or property interest."  *Callender*, 591 N.W.2d at 189.

defined as "the relinquishment or surrender for a period in excess of six months of the parental rights, duties, or privileges inherent in the parent-child relationship." Iowa Code § 232.2(14). Proof of intent to desert is not required. *Id.* The district court did not address desertion but, even if it had, we would conclude this ground was not proven. After being served with the termination petition, James contacted the department, sought counsel, and appeared at the termination hearing. Although he did not follow up with the department in the two months between service and the termination hearing, his appearance at the termination hearing belies the State's assertion that he "relinquished" his parental rights, duties, or privileges.

The district court also concluded James did not maintain significant and meaningful contact with the child. *See id.* § 232.116(1)(e). The district court found he only had seen his child "three or four times since" the child's birth in 2009, did not demonstrate "a genuine interest in the child or perform[ ] the duties expected of a parent," was told he needed to start complying with services immediately after being served with the termination petition but "cancelled a meeting with the DHS worker, and was not heard from again," "never contributed to" the child's "financial support," and "made no effort to legally establish paternity, or establish custody and visitation." Again, James contends this ground was not proven and, again, we agree.

Iowa Code section 232.116(1)(e) requires the State to prove that James did not maintain significant and meaningful contact with the child "during the previous six consecutive months" and "made no reasonable efforts to resume care of the child despite being given the opportunity to do so." The State failed to

prove James was "given the opportunity to do so" because no reunification services were provided while the child-in-need-of-assistance action was pending. The State's focus on services offered after the filing of the termination petition is off the mark, because the department's obligation to make reasonable reunification efforts began at the time the child's custody was transferred to the department, well over a year earlier. *See id.* § 232.102(5), (7); *In re C.B.,* 611 N.W.2d 489, 493 (Iowa 2000) (noting the "critical role of reasonable efforts from the very beginning of intervention"). This ground for termination was not satisfied.

For the same reason, the final ground for termination, Iowa Code section 232.116(1)(f), also was not satisfied. This provision requires proof that the child cannot be returned to the parent's custody. Like paragraph (e), this ground "implicates the reasonable effort requirement." *See C.B.,* 611 N.W.2d at 492. As discussed, the requirement was not established.

In sum, assuming we are obligated to reach the merits of the termination decision where there is an absence of notice, we conclude the grounds for termination cited by the district court are not supported by clear and convincing evidence.[3]

## IV. *Disposition*

We vacate—and in the alternative, reverse— the termination decision as to James. Because the other parents did not appeal the termination decision, the

---

[3] The grounds for termination under section 232.116(1)(e) and (f) each include an element that the child has been adjudicated in need of assistance. We conclude that element of paragraphs (e) and (f) was also not satisfied as to James in light of our earlier conclusion that the child-in-need-of-assistance proceeding is void as to him.

ruling is final as to them.  We remand with directions to reopen the child-in-need-of-assistance proceeding as to James so that he may engage in reunification services.  We acknowledge that this disposition will delay permanency for the children but note that they were placed with relatives, which we trust will minimize the resulting disruption.

**VACATED, REVERSED, AND REMANDED WITH DIRECTIONS.**