Charles E. CALLENDER, Appellee,

v.

Rebecca D. SKILES, Appellant,

Rick L. Skiles, Respondent.

No. 00–0069.

Supreme Court of Iowa.

March 21, 2001.

R. Douglas Wells of Wells & Wells, P.L.C., Davenport, for appellant.

M. Leanne Tyler of Tyler & Associates, P.C., Davenport, for appellee.

Jill A. Cirivello, Davenport, for minor child.

SNELL, Justice.

Rebecca D. Skiles, the mother of Samantha Skiles, appeals the amount of visitation of her daughter that was granted to the biological father. She argues the district court conducted an improper best interest of the child analysis. She also appeals the district court's order mandating when to tell the child of her true lineage. On appeal, we find that the amount of visitation was proper and supported by the child's best interest. However, we agree with the mother that the act of telling the child of her parentage should not have been ordered by the court. Accordingly, we affirm the district court's decision as modified.

## I. Factual Background and Procedure

This case involves the application of its predecessor decided by our court. *Callender v. Skiles,* 591 N.W.2d 182 (Iowa 1999) (*Callender I*). In that case, we reversed and remanded the putative father's previously denied attempt to obtain standing to establish a relationship with his daughter. We sent the case back to the district court for a determination of whether overcoming paternity and granting visitation to the putative father was warranted. *Id.* at 192.

The background described in *Callender I* necessary to this appeal is as follows. Charles Callender and Rebecca Skiles had an intimate relationship while Rebecca was separated from her husband, Rick Skiles. Rick and Rebecca reconciled, but not before Rebecca became pregnant with another man's child. Rick accepted the child as his own, and the couple and their other children now live together with baby Samantha as a family. Within six months of Samantha's birth, Charles sought to prove he was the biological father to obtain custody, visitation, and establish child support. The district court ordered that a blood test be performed, which established with a statistical certainty that Charles was Samantha's biological father.

Charles was then allowed minimal visitation with his daughter at a neutral site. Charles became unsatisfied with this arrangement and sought greater interaction, as well as the termination of Rick Skiles's parental rights to Samantha. Rick and Rebecca argued that Charles had no standing to challenge paternity, and the district court agreed the relevant statute did not provide Charles with the right to pursue this action.

*Callender I* addressed whether Charles had standing to challenge paternity. *See* Iowa Code ch. 600B (1997). We found that this chapter foreclosed Charles from making a challenge because he was neither an "interested" person nor the "established father." However, this was not fatal because we held such an outcome violated Charles's right to due process.

We remanded the case to the district court to determine if paternity should be established in Charles and if a relationship between Charles and Samantha was warranted. Our court asked the district court to ensure that: (1) Charles had not waived his right to challenge paternity; (2) Paternity could be established in Charles; and (3) A relationship between Charles and Samantha was in her best interest. Our holding was sufficiently limited in *Callender I* to standing, but we directed the district court where it should look for guidance on remand.

We only hold our statute must provide a procedural mechanism for claims to be brought. We leave the substantive claim of parenting for further determination under the similar standards governing the challenge of an established father, including the best interest of the child.

*Callender I*, 591 N.W.2d at 192 (referring to Iowa Code § 600B.41A(6)(a)(2)).

On remand, the district court terminated the parental rights of Rick. It established paternity of then four-year-old Samantha with Charles and determined a visitation schedule to begin immediately. Rebecca appeals. Specifically, she argues that the district court improperly considered factors outside the parameters of section 600B.41A. She asserts that *Callender I* does not authorize the use of Iowa Code section 598.41's presumption in tandem with the factors in section 600B.41A(6)(a)(2). Rick did not appeal the disestablishment of his paternal relationship with Samantha.

II. Scope and Standard of Review

 Questions of paternity are reviewed on legal error. *Id.* at 184. As such, we are bound by only those factual findings made by the trial court based upon substantial evidence. Iowa R.App. P. 14(f)(1). However, where our review requires us to pass judgment on the reasonableness of the court's visitation and custody award, we utilize a de novo review. *In re Marriage of Forbes*, 570 N.W.2d 757, 759 (Iowa 1997); *Dye v. Geiger*, 554 N.W.2d 538, 539 (Iowa 1996) ("Decisions ancillary to the question of paternity, such as support, are reviewed by this court de novo."). We need only give weight to the trial court's factual findings, but are not bound by them. *See* Iowa R.App. P. 14(f)(7); *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983).

Rebecca is appealing the amount of visitation directed and the order to tell Samantha of her true father following the court's disestablishment of paternity. Because we believe she is not challenging the

disestablishment per se, but rather the ancillary decisions from that, we will employ a de novo review.

## III. Issue on Appeal

The question here concerns the best interest of a child whose biological father is not the person she knows as her father. Specifically, because Charles is now the established father, what type of relationship between Charles and Samantha is in her best interest? *Callender I* directed the district court to consult the factors found in section 600B.41A(6)(a)(2) for a determination of what type of relationship is appropriate. The statutory factors include:

> In determining the best interest of the child, the court shall consider all of the following:
>
> (a) The age of the child.
>
> (b) The length of time since the establishment of paternity.
>
> (c) The previous relationship between the child and the established father, including but not limited to the duration and frequency of any time periods during which the child and established father resided in the same household or engaged in a parent-child relationship as defined in section 600A.2.
>
> (d) The possibility that the child could benefit by establishing the child's actual paternity.
>
> (e) *Additional factors which the court determines are relevant to the individual situation.*

Iowa Code § 600B.41A(6)(a)(2) (emphasis added).

This section does not purport to be exclusive in listing the factors in a best interest determination. The language of section 600B.41A(6)(a)(2)(e) authorizes the court to consider other relevant factors outside its language. As such, there is no standard test for what is in every child's best interest in every case.

## A. The Best Interest Standard

Rebecca alleges that the district court impermissibly considered the presumption found in section 598.41. This presumption states:

> The court, insofar as is reasonable and in the best interest of the child, shall order the custody award, including liberal visitation rights where appropriate, which will assure the child the opportunity for the maximum continuing physical and emotional contact with both parents....

*Id.* § 598.41(1)(a). Rebecca believes that section 598.41 should not be applied in the instant case because it is a provision utilized in normal custody disputes between two parents who are divorcing. This section places an emphasis on the tenet that a continuation of already established contact with both parents is likely to be in a child's best interest.

Here, we have a unique and complicated situation. Samantha knows Rick as her father and has an established relationship with him in his home. Charles, the biological father, has not had visitation with Samantha since she was two and one-half years old, and now has only just begun to visit Samantha after establishing his paternity. Under these facts, Rebecca maintains that section 598.41's preference for maximum contact is an inappropriate factor to determine what amount of visitation is appropriate.

■ On this matter, the court stated:

> The Court's initial impression was to treat the amount of visitation like a "typical" dissolution—alternate weekends, alternate major holidays, Father's Day, alternate the child's birthday, and extended summer visitation. But the Court also needs to consider, among other things, the other three children and what effect and disruption Samantha's visitation schedule will have on them and on her relationship with them. Because of these factors, the Court finds that it would not be appropriate to grant the

same visitation that is typically granted in a dissolution.

In reading the court's opinion as a whole, we do not find that the presumption noted in section 598.41 was applied. When it is in the best interest of the child to do so, the court may consider maximum contact with both parents. In deciding visitation rights using a best interest of the child analysis under section 600B.41A(6)(a)(2), it is not improper for a court to consider other established principles of visitation. Some have been codified in section 598.41, others have been delineated in our prior cases.

### B. The Best Interest of Samantha

■ Rather than follow a more usual blueprint for visitation, the court imposed a somewhat lesser schedule. The visitation schedule is as follows:

1. For the first three months Charles was allowed the first and third Saturday of each month from 10:00 a.m. to 5:00 p.m.

2. Thereafter, Charles was allowed the first and third weekends of each month from 10:00 a.m. Saturday to 5:00 p.m. Sunday.

3. Charles was granted every Thanksgiving weekend from 5:00 p.m. Friday to 5:00 p.m. Sunday.

4. Charles was allotted the period from the day after winter break begins at 9:00 a.m. to 10:00 p.m. Christmas Eve.

5. Charles received one week each summer to begin the summer of 2001, increasing to two weeks each summer in 2004.

Notably, Charles was not allowed any major holidays to spend with Samantha. The summer vacation award was also fairly conservative. Finally, Charles was not provided the Wednesday night visitation often granted.

The district court's opinion appears to be well thought out and mindful of the parties' anguish. Because our review on this issue is de novo, we give considerable weight to the court's factual findings, but are not bound by them. Samantha's age, her relationship with Rick, the length of

this relationship, and the benefit of establishing paternity are all subsumed in our determination.

The record contains the expert findings of a psychologist. His testimony, as well as his reports, indicate an intricate knowledge of the parties and their situation. He recommended that a relationship with Charles was in Samantha's best interest. There was also favorable evidence detailing Charles's lifestyle and his ability to care for Samantha, as well as his voluntary payment of child support. Unfavorable evidence in the record regarding the behavior of Charles's parents is a relevant factor in determining the amount of visitation awarded to Charles. As bearing on visitation, we also give consideration to the consequent disruption to the Skiles home.

In sum, we find that the facts support the visitation awarded by the court. Such an arrangement is a necessary way to create normalcy and consistency in the life of a young child whose biological parents have never been married to each other, but who are both capable and willing to be involved in their child's life. The district court did not find this situation was identical to that of a child of divorcing parents, nor do we. Our determination is solely founded on what is in the best interest of Samantha.

### C. Disclosure of Parentage

■ The district court also determined that Samantha should be informed that Charles is her father before kindergarten begins. It concluded Samantha's best interest dictated a court-imposed timeline for telling her of her true lineage. Rebecca argues that this ruling interferes with the family's autonomy.

■ We have "recognize[d] that the government is ill-equipped to dictate the details of social interaction among family members." *Olds v. Olds,* 356 N.W.2d 571, 574 (Iowa 1984). This statement was made in relation to court-ordered, grandparent visitation. "[T]he parenting right is a fundamental liberty interest that is protected against unwarranted state intrusion." *Id.*

Other jurisdictions have also recognized the autonomy of the family in child matters. "The trial court does not have the responsibility or the authority or the ability to create ideal circumstances for the family." *In re Marriage of Littlefield*, 133 Wash.2d 39, 940 P.2d 1362, 1371 (1997). Moreover, "the best interests test is not intended to allow the court to micromanage a child's custody from the entry of the final judgment until the child becomes an adult.... [T]hese decisions should usually be made by the parents in private." *Chant v. Chant*, 725 So.2d 445, 448 (Fla. Dist.Ct.App.1999).

We can find no instance where we have upheld a court-ordered timeline for telling a child of her ancestry. Similarly, there is no statutory authority to do this. The court is able to establish paternity and visitation by viewing what is in a child's best interest, but this does not mean that it should necessarily dictate when the child must be told of her paternity.

Accordingly, upon our de novo review we affirm the trial court's establishment of a relationship and visitation schedule for Charles and Samantha. The district court did not use an improper standard or impermissibly rely on section 598.41. We believe the presumption in section 598.41 is a relevant factor among many for determining what is in a child's best interest. Clearly, if such a preference is not within a child's best interest, it would be inappropriate to grant maximum visitation. Looking at all facts present in the record, the visitation schedule of less than maximum visitation is in Samantha's best interest at this time.

We modify the court's determination regarding when Samantha should be told of her parentage. Although we may agree that she needs to be told sooner rather than later, we leave the decision to Rebecca as the sole custodial parent.

The parties shall be responsible for their own attorney fees. Costs of this appeal are assessed against the appellant.

**AFFIRMED AS MODIFIED.**

All justices concur except TERNUS, J., who concurs in part and dissents in part and is joined by CARTER and CADY, JJ.

TERNUS, Justice (concurring in part and dissenting in part).

I concur in the court's opinion with the exception of the majority's instruction that Rebecca Skiles shall make the decision as to when Samantha should be told of her true parentage. I respectfully dissent from that portion of the court's opinion.

As the majority recognizes, "the government is ill-equipped to dictate the details of social interaction among family members." *Olds v. Olds*, 356 N.W.2d 571, 574 (Iowa 1984). As the majority also states, "[t]he trial court does not have the responsibility or the authority or the ability to create ideal circumstances for the family." *In re Marriage of Littlefield*, 940 P.2d 1362, 1371 (Wash. 1997). In accordance with these principles, the majority finds fault with the district court for "dictat[ing] *when* the child must be told of her paternity." (Emphasis added.) Nonetheless, the majority proceeds to dictate *who* will make the decision with respect to telling the child of her paternity.

I cannot concur in this decision for two reasons. First of all, the court is unfairly inconsistent in criticizing the trial court for micromanaging the family and then proceeding to do just that. We should exercise judicial restraint by not enmeshing the court in personal decisions best left to the parties to sort out without court involvement. In addition, the court's decision is unenforceable. The reality is that neither this court nor Rebecca Skiles can prevent persons not a party to this lawsuit from telling Samantha that Charles is her father. This fact merely illustrates that the court is indeed "ill-equipped to dictate the social interaction among family members." We should not attempt to do so here.

CARTER and CADY, JJ., join this concurrence in part and dissent in part.