David Earl DYE, Appellant,

v.

Jack GEIGER, Appellee,

And Concerning

Sheila Marie Dye n/k/a Sheila Marie Voelker and Travis William Dye, a Minor, by Sheila Marie Voelker, his Mother and Next Friend.

No. 95–682.

Supreme Court of Iowa.

Oct. 23, 1996.

Lucy E. Harrington of John C. Wagner Law Offices, P.C., Cedar Rapids, for appellant.

Henry E. Nathanson of Johnston, Potterfield & Nathanson, P.C., Cedar Rapids, for appellee.

Michael L. Mollman, Cedar Rapids, for Sheila Voelker.

Richard L. Boresi of King, Smith & Boresi, Cedar Rapids, for Travis Dye.

Considered by HARRIS, P.J., and LARSON, LAVORATO, NEUMAN, and TERNUS, JJ.

NEUMAN, Justice.

Appellant David Dye brought this declaratory judgment action to overcome established paternity in accordance with Iowa Code section 600B.41A (1995). The district court dismissed the petition, ruling that Dye failed to prove one of the seven statutory criteria—that the action serves the best interests of the child whose paternity is at issue. The court also declined to discharge Dye's child support obligation. Because we believe the

record substantially supports the court's decision, we affirm.

David and Sheila Dye married in July 1982. Their relationship was stormy, and by June 1983 they had separated. During their separation, Sheila had a relationship with respondent, Jack Geiger. David and Sheila reconciled in late July. Sometime in August, Sheila learned that she was pregnant.

When Travis was born in March 1984, David was dubious about his paternity. Sheila was equivocal. David nevertheless attended the birth and took an active role in parenting Travis.

David and Sheila's marriage ultimately failed. They were divorced in August 1985. By stipulation of the parties, the court granted them joint custody. Sheila was granted Travis's primary care, but David visited him regularly and dutifully paid child support.

Problems soon developed over visitation. David sought twice to have Sheila found in contempt for violating his visitation privileges; both times the dispute was settled by enlarging David's visitation rights. The problems persisted, and David, believing he was the more stable parent, eventually sought custody of Travis. An order so modifying the decree was entered by the court in August 1990. Travis moved in with David and his new wife and daughter.

This arrangement continued until May 1991, but not without further controversy over visitation. David evidently became concerned that Travis was being emotionally "torn apart" by this parental tug-of-war. For reasons not entirely clear in the record, David reacted to the problem by simply walking away from it. He relinquished Travis's care to Sheila. Their subsequent contacts by mail, phone, and an occasional visit, have been sporadic at best.

Because this new custodial arrangement was not formalized in court, further controversy arose over support. Blood tests were secured, confirming David's suspicion that Jack Geiger, not he, was Travis's biological father. David then commenced this declaratory judgment action under Iowa Code section 600B.41A(3) to overcome established paternity. The district court found insufficient proof to support the petition, and this appeal by David followed.

■ I. Actions to establish or overcome paternity are triable as ordinary proceedings. Iowa Code §§ 600B.10, .41A(5). Hence our review is for the correction of legal error. *Mason v. Hall*, 419 N.W.2d 367, 369 (Iowa 1988) (applying Iowa Code chapter 675 (1981), recodified in 1983 as chapter 600B). That means, of course, we are bound by the district court's factual findings that are supported by substantial evidence. Iowa R.App.P. 14(f)(1). Decisions ancillary to the question of paternity, such as support, are reviewed by this court de novo. *Mason*, 419 N.W.2d at 369.

■ II. Iowa Code section 600B.41A(1), enacted by the legislature in 1994, permits a father whose paternity has been legally established (as in this case, "when the established father and the mother of the child are or were married to each other") to overcome that legal presumption when genetic testing indicates he is not the biological father. Genetic test results, however, are not conclusive on the question. They are only one factor in a list of seven conditions, paraphrased here, that must be satisfied by the petitioner: (1) filing an action before the child reaches majority; (2) naming the interested parties to the action, plainly stating the grounds for relief; (3) proof of notice to interested parties; (4) appointment of a guardian ad litem for the child; (5) blood or genetic testing conducted in accordance with pertinent statutes; (6) expert evidence disclosing that the established father is not the biological father of the child; and (7) finding by the court that overcoming the establishment of paternity is in the best interest of the child. Iowa Code § 600B.41A(3)(a)–(g).

Only the best-interest test is at issue in this controversy. Here, too, the statute gives specific guidance, directing the court to consider "all of the following" in reaching its decision:

(1) The age of the child.

(2) The length of time since the establishment of paternity.

(3) The previous relationship between the child and the established father, includ-

ing but not limited to the duration and frequency of any time periods during which the child and established father resided in the same household or engaged in a parent-child relationship as defined in section 600A.2.

(4) The possibility that the child could benefit by establishing the child's actual paternity.

(5) Additional factors which the court determines are relevant to the individual situation.

Iowa Code § 600B.41A(3)(*g*).

Applying these criteria to the facts presented at trial, the district court found David failed to prove that a judgment overcoming paternity would be in Travis's best interest. In fact, the court concluded that "extreme prejudice" would be visited upon Travis if the paternity determination were set aside. David challenges that conclusion on appeal. He claims the court erred in its assessment of the true nature and quality of David and Travis's relationship, overlooked the psychological stress suffered by Travis due to David and Sheila's confrontations, and "perpetuate[d] a lie" by preventing Travis from facing the truth about his parentage.

Clearly these are matters about which reasonable minds might differ. As even a brief review of the record reveals, the conclusions drawn by the court—though different from those argued by David—are supported by substantial evidence.

Travis was eleven years old at the time of trial. His relationship with David started at his birth. David was married to Travis's mother, and is the only father Travis has ever known. Although aware of the controversy over his genetic identity, Travis still identifies himself as David's son. David has reinforced that identity over the years by not only striving to exercise regular visitation, but by successfully pursuing a modification that granted him Travis's primary care.

David stresses on appeal that he and Travis resided in the same household for only two periods that covered no more than a total of nineteen months. But the record also supports the court's finding that the two maintained a very warm and close relationship for the first eight years of Travis's life. Both profess a continuing love for one another. Travis's guardian ad litem conveyed Travis's bewilderment over the emotional distance David has created between them. Travis nevertheless remains willing to renew the bond that is so important to him.

The record reveals that neither Travis, nor Jack Geiger, have any interest in establishing a father-son relationship. Their biological ties are not meaningful to them. Jack has his own family, independent of Travis. They do not feel bound to one another. From this evidence, the court found no benefit would be derived from establishing the child's "actual" paternity. *See* Iowa Code § 600B.41A(3)(*g*)(4).

We are obliged to view the record in the light most favorable to upholding the court's judgment. *Anderson v. Aspelmeier, Fisch, Power, Warner & Engberg,* 461 N.W.2d 598, 600 (Iowa 1990). That is not difficult for us to do here. We believe the broad grant of discretionary authority vested in the trial court by this new statutory scheme was wisely exercised and warrants our affirmance.

■ III. Under Iowa Code section 600B.41A(6), a court finding insufficient proof to overcome paternity may nevertheless relieve the established father of future support. The court declined to do so here, largely because of David's long delay in raising the issue, and the "extreme prejudice" Travis would suffer if David were relieved of his obligations. On appeal, David claims the court abused its discretion in so ruling. We disagree.

The decision rests in the sound judgment of the trial court, as evidenced by the highly discretionary language chosen by the legislature:

If the court determines that test results conducted in accordance with section 600B.41 or chapter 252F exclude the established father as the biological father, but the court dismisses the action to overcome paternity, the court *may* enter an order relieving the established father of any or all future support obligations owed on behalf of the child, while preserving the paternity determination. The court's de-

termination and the effective date of the determination shall be in accordance with subsection 4, paragraphs "*a*" and "*b*", and shall be made based upon *the unique circumstances of each case and the interests of all parties.*

Iowa Code § 600B.41A(6) (emphasis added).[1]

David's brief, which makes no mention of section 600B.41A(6), asserts that Travis is "technically, merely his stepchild" and thus unentitled to David's support as a matter of law. *See In re Marriage of Carney,* 206 N.W.2d 107, 112 (Iowa 1973); *In re Marriage of Holcomb,* 471 N.W.2d 76, 78 (Iowa App.1991). The argument clearly has no application here. By operation of law, David's status as Travis's father—not stepfather—was established at Travis's birth. Iowa Code § 144.13(2). The presumption of legitimacy attending that legal designation reflects long established social policy and legislative respect for the integrity of the family unit. *Michael H. v. Gerald D.,* 491 U.S. 110, 124, 109 S.Ct. 2333, 2343, 105 L.Ed.2d 91, 107 (1989). David's legal status as parent could have been overcome by sufficient proof under section 600B.41A(3), but he failed to meet that test.

The question is, notwithstanding David's ongoing status as parent, should he be relieved of his financial obligation to his son? We think not. David may scornfully characterize the court's ruling as a charade, but we are more inclined to view it as an attempt to foster responsible parenting. We hope that David's heart will follow his money. In any event, we concur in the district court's wise observation that David "assumed the role of father and assumed it long enough and under such circumstances that he should be bound by the undertaking."

We affirm the district court's declaratory judgment in its entirety.

**AFFIRMED.**

---

**1.** Subsection 4, paragraphs "*a*" and "*b*" address the appropriate "cut-off" dates for future or established child support awards.