**IN THE COURT OF APPEALS OF IOWA**

No. 16-1164
Filed May 3, 2017

**MANUELA BAKER,**
        Plaintiff-Appellee,

**vs.**

**MICHAEL R. JONES,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Edward A. Jacobson, Judge.

A father appeals the decree that placed the parties' child in the physical care of the mother. **AFFIRMED.**

Craig H. Lane, Sioux City, for appellant.

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, and Jacquelyn Johnson of Vonnahme Law, P.C., Sioux City, for appellee.

Heard by Doyle, P.J., and Tabor and McDonald, JJ.

**PER CURIAM.**

Michael Jones appeals the court's decree that granted the parties joint physical care of the parties' five-year-old son until such time as Manuela (Mandie) Baker relocates to Louisiana. When Mandie relocates, the court ordered the child to be in Mandie's physical care subject to Michael's visitation during the summer and three-day weekends during the school year. Michael contends the court should have granted him physical care of the child when Mandie moves to Louisiana because all of the child's support system is in Iowa, including the child's half-sibling. Because we agree with the district court that the child's best interests favor placing the child in Mandie's physical care if and when she moves to Louisiana, we affirm the district court's decision.

**I. Background Facts and Proceedings.**

Michael and Mandie are the parents of five-year-old E.J. The parties never married, but when their romantic relationship ended in 2014, the parties agreed to joint physical care, alternating the care of E.J. on a weekly basis and agreeing no child support would be paid by either party. In November 2015, Mandie filed a petition to establish custody, visitation, and support because she anticipated relocating to Louisiana for her employment and wanted to have physical care of E.J. In response, Michael asked for the joint physical care to continue and, alternatively, requested physical care of E.J. if Mandie relocates to Louisiana.

The case proceeded to trial in April 2016. The district court issued its decision in June, concluding in light of Mandie's proposed relocation,

joint physical care is not physically possible in this case and therefore is not appropriate. The court finds that although the parties have successfully shared joint physical care thus far in the child's life, the primary caregiver in times of need and in times of crisis for the child has always been Mandie. Although the court, like Mike, has concerns that the move to Baton Rouge will disrupt the child's life, Mandie appears to have taken into consideration every detail, and the court believes that as long as the child is with Mandie, the child will be fine. Children of such tender years are extremely flexible, and the court has no doubt that Mandie will give the child the attention needed to adjust to the move to Baton Rouge.

The court awards primary care of the minor child to [Mandie] subject to visitation with [Michael]. The court awards joint physical care of the minor child on a week-to-week basis until [Mandie] moves, at which time, the court awards her primary physical care of the minor child.

The court granted Michael visitation from three days after the child begins his summer break from school until one week before school resumes, though Mandie was granted one weekend per month during June and July. The court also granted Michael visitation every spring break and every extended weekend during the school year when E.J. has a Monday or Friday off. In addition, Michael is allowed to exercise visitation with E.J. in Louisiana one weekend per month and two weeks during the school year. The court also ordered Mandie to pay for the cost of E.J.'s travel that she schedules for visitation. The court ordered Michael to pay child support but required Mandie to provide the health insurance for E.J. since E.J. will be living with her in Louisiana.

Michael asserts on appeal the district court should have granted him physical care of E.J. in the event Mandie moves to Louisiana because neither

Mandie nor the child has a support system in Louisiana and E.J. has a half-sibling[1] and other extended family in Iowa.

## II. Scope and Standard of Review.

While actions to establish or overcome paternity are reviewed for the correction of errors at law, *see Dye v. Geiger*, 554 N.W.2d 538, 539 (Iowa 1996) (citing Iowa Code §§ 600B.10, .41A(5) (2015)), decisions that are ancillary to the question of paternity, such as "support, custody, [and] visitation" are heard in equity, and our review is therefore de novo. *See Mason v. Hall*, 419 N.W.2d 367, 369 (Iowa 1988). Under a de novo review, we examine the entire record and adjudicate anew the issues properly presented. *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007). While we are not bound by the district court's findings of fact, we give weight to those findings, especially with respect to the credibility of witnesses in light of the court's firsthand opportunity to hear the evidence and view the witnesses. *In re Marriage of Brown*, 778 N.W.2d 47, 50 (Iowa Ct. App. 2009).

## III. Physical Care.

In child custody cases, our focus is on the best interests of the child, and "[o]ur objective is 'to place the child in the environment most likely to bring that child to healthy physical, mental, and social maturity.'" *Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988) (citation omitted). Our analysis to resolve the issue of physical care is the same whether or not the parents of the child had been married. *Id.* We consider the statutory factors listed in Iowa Code section

---

[1] Michael has visitation with E.J.'s half-brother, who is approximately the same age as E.J., every Tuesday and every other weekend.

598.41(3) and the factors listed in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). *Lambert*, 418 N.W.2d at 42; *see also* Iowa Code § 600B.40.

Mandie testified she planned to relocate to Louisiana in the next couple of months (by August 2016[2]) because her position with her employer was ending and she had been offered a position in her employer's home office in Louisiana. Mandie testified she was making considerably more money with this employer than she had ever made with any other employer. The most she had made before working for her current employer was $12.75 per hour. Her current employment paid her $27.00 per hour, and the position in Louisiana would pay $25.00 per hour plus a relocation stipend of $60.00 per work day for the first year. She testified she contacted a staffing agency who informed her that there were no Sioux City employment opportunities with comparable income based on her education and experience. Mandie asserted the agency would not take her resume. But the last time Mandie sent out a resume to locate other employment opportunities in the Sioux City area was seven months before the trial.

Michael asserts Mandie should have the burden to show that her decision to relocate for employment out of state is in the best interests of the child. He is concerned that as of the time of trial Mandie had not yet adequately planned for the move, such as obtaining housing and locating schools. He contends Mandie has no family or support system in Louisiana and all the child has ever known and all the people the child loves, including a half-sibling, are located in Iowa. Michael thus asks that we permit the child to remain in Iowa with him and the

---

[2] No stay of the district court's physical care decision appears in our record.

child's extended family instead of being "uprooted and placed in a state and in a life about which he knows nothing" with the hope that the child "will adapt to all of these unnecessary changes when he should not be forced to do so."

It was clear to the district court, and it is clear to this court on appeal, that if both parties intended to remain in the same geographic locality, joint physical care would be a viable and appropriate option considering how well these parties have communicated over the previous two years and the obvious respect each one has for the other party as a parent. Unfortunately, with Mandie's intended job relocation out of state, joint physical care is no longer an option. Thus, the question before the district court, and this court on appeal, is which party can best provide for E.J.'s long-term best interests.

> All factors bear on the "first and governing consideration," the court's determination of what will be in the long-term best interests of the child. The critical issue in determining the best interests of the child is which parent will do better in raising the child; gender is irrelevant, and neither parent should have a greater burden than the other in attempting to gain custody . . . ."

*In re Marriage of Shanklin*, 484 N.W.2d 618, 619 (Iowa Ct. App. 1992) (citation omitted).

While the parties were together and after the parties separated, Mandie has been the primary caregiver during times of the child's illness and has been the parent who has made all arrangements for the child's care, treatment, and activities. She has scheduled and attended all physician appointments, selected all day care providers, and been the one to schedule activities such as swimming lessons and tee ball. Mandie testified the reason she had not yet located

housing, a school, and medical providers in Louisiana at the time of trial was because she was awaiting the court's physical care decision.

Mandie's job in Louisiana offers work hours from 8:00 a.m. to 4:30 p.m., whereas Michael's employment in Iowa has extended evening and weekend hours, requiring him to rely on his parents to care for E.J. when E.J. is not in day care or school. We acknowledge that "[s]iblings in dissolution actions should be separated only for compelling reasons" and this "principle has also been recognized as having application to half siblings." *In re Marriage of Quirk-Edwards*, 509 N.W.2d 476, 480 (Iowa 1993) (internal citations omitted). However, while living in Iowa, E.J. has contact with his half-brother approximately six days a month due to the current visitation schedule for each child. While reducing that contact will have an impact on both children, the court ordered visitation agreement in this case could still result in the children having at least monthly contact and more extensive contact during the summer.

Upon our de novo review of the evidence presented by the parties in light of the appropriate custodial factors, we agree E.J. should be placed in Mandie's physical care. We affirm the decision of the district court.

## IV. Appellate Attorney Fees.

Mandie requests an award of appellate attorney fees in light of her obligation to defend the district court's decision on appeal.

> Appellate attorney fees are not a matter of right, but rather rest in this court's discretion. Factors to be considered in determining whether to award attorney fees include: "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal."

*In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006) (citations omitted); *see also* Iowa Code § 600B.26 (noting a court may award the prevailing party reasonable attorney fees in a paternity action). After consideration, we decline to award Mandie appellate attorney fees.

**AFFIRMED.**