# IN THE COURT OF APPEALS OF IOWA

No. 19-0528
Filed February 19, 2020

**CONSUELA M. BROWN,**
        Plaintiff-Appellant,

**vs.**

**STEVEN L. ROQUET,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Wapello County, Lucy J. Gamon, Judge.

        Consuela Brown appeals the district court child support order.  **AFFIRMED AS MODIFIED AND REMANDED.**

        Danni J. Harris and Kimberly S. Bartosh (until withdrawal) of Whitfield & Eddy, P.L.C., Des Moines, for appellant.

        Heather M. Simplot and Patrick F. Curran of Harrison, Moreland, Webber, Simplot & Maxwell, P.C., Ottumwa, for appellee.

        Heard by Tabor, P.J., and Greer and Ahlers, JJ.

**GREER, Judge.**

Consuela Brown appeals an order imposing a past child support obligation on Steven Roquet for their minor child. Consuela argues the court should not have used half of the child's personal injury settlement to reduce Steven's past support obligation and should have assessed a higher interest rate on the past payments. She asks for appellate attorney fees. We conclude the district court should not have used the settlement to reduce the past child support award and the court should have imposed a ten percent interest rate, but this interest rate applies only if Steven is more than thirty days delinquent on a payment. We grant Consuela appellate attorney fees. We remand for entry of an order consistent with this opinion.

## I. Background Facts and Proceedings.

From July 2008 until January 2018, Consuela and Steven had an on-again, off-again relationship, which produced one child, T.B., born in 2009. Consuela did not inform Steven she was pregnant until six months into the pregnancy. Yet no paternity testing occurred until July 2013. As their son matured, they learned he had intellectual disabilities and several medical concerns. The child has received government benefits throughout his life. No formal child support order existed before this case, but Steven intermittently gave Consuela money and paid for items.[1]

---

[1] Steven has been married to another woman since 1985. Steven did not want his wife or their children to find out about his affair or T.B., a driving force behind the parties avoiding a formal support order.

In July 2013, a dog bit T.B. in the face causing serious injuries. Consuela filed a personal injury claim on the child's behalf.[2] The claim ultimately settled with the child allocated net proceeds of $43,697.22. A conservatorship was established for T.B. with the mother appointed as conservator to manage the funds for his benefit. Consuela, with help from counsel and agreement of the Iowa Department of Human Services and the district court, preserved the settlement funds by investing them in her home to pay off the mortgage. This arrangement prevented the payment of settlement funds from affecting T.B.'s ability to keep receiving government benefits for his developmental and medical needs. As a part of her fiduciary duty as the conservator, Consuela intends to pay T.B. the settlement funds plus interest when he is an adult.

For reasons unimportant here,[3] on December 12, 2016, Consuela finally petitioned to establish paternity, custody, visitation, and child support. At the time, because there was an ongoing juvenile court case involving the child, this case was stayed pending resolution of the juvenile court proceedings. The stay lifted in January 2018.

---

[2] The record does not reflect what Steven knew about the dog bite case or the settlement when it occurred.

[3] On this record, the reasons for waiting to file for child support are not clear nor are they relevant to the purpose of child support and Steven's obligation to provide for his child. For example, Consuela testified Steven promised marriage but needed time to resolve complicated financial issues and even sent her cards calling her "his wife." And Consuela believed from Steven's statements that if she filed this action he would take custody of their child. Whether true or not, Steven alluded to Consuela that he had power and influence.

After legal posturing, the parties stipulated to joint legal custody, future child support,[4] Consuela having physical care of the child, and Steven having visitation. As for the remaining issues, after a two-day bench trial, the district court entered a decree concluding that Steven should have been paying $1703.23 per month during T.B.'s life over a period of 106 months. The court found his past total child support obligation without deductions totaled $180,542.38. Then the court applied six deductions to this total amount: (1) $14,000 for giving Consuela use of a Dodge van; (2) $9902.84 for paying for gasoline; (3) $1478.34 for paying for auto parts; (4) $21,844.61 for half of the personal injury settlement proceeds T.B. received from his dog bite case; (5) $19,759.14 for social security disability income the child received; and (6) $50,000 for cash gifts he provided to Consuela. After these deductions, the court entered judgment against Steven for $63,557.45, paid at the rate of $500 per month. The order required Steven to pay interest on the judgment at the statutory rate from the date of the entry of the decree. Both parties moved to reconsider, enlarge, or amend.

On March 6, the district court enlarged and amended the decree. It ordered a 4.54% post-judgment interest rate on the past child support payments. The court denied Consuela's request to increase the amount of Steven's past child support obligation and increase the monthly installments he must pay. Consuela appeals.

---

[4] With regard to future child support, the parties stipulated to a monthly obligation of $1483.98, using $15,080 for Consuela's income and $205,702 for Steven's income.

## II.  Standard of Review.

"Generally, in paternity actions, we review issues 'ancillary to the question of paternity, such as support,' de novo.  *Markey v. Carney*, 705 N.W.2d 13, 19 (Iowa 2005) (quoting *Dye v. Geiger*, 554 N.W.2d 538, 539 (Iowa 1996)); *see also* Iowa R. App. P. 6.907 ("Review in equity cases shall be de novo.").

## III.  Analysis.

Consuela narrowed her appeal to a few issues.  First, she objects to the dog bite settlement deduction.  We first address the deduction to the total amount of Steven's past support obligation.  Then, we will discuss the appropriate interest rate to apply to the payments.  Finally, we address Consuela's request for appellate attorney fees.

**A.  Personal Injury Settlement Reduction.**  "Unlike a current child support obligation, the guidelines are not used to establish the amount of past child support."  *Markey*, 705 N.W.2d at 24; *see also* Iowa Code § 600B.25 (2016).  Instead, the "court may order the father to pay amounts the court deems appropriate for the past support and maintenance of the child."  Iowa Code § 600B.25(1).  "This standard permits the court to consider all the surrounding facts and circumstances to determine the amount in light of the *purpose of child support* and the *duty of a parent to pay child support*."  *Markey*, 705 N.W.2d at 24 (emphasis added).  Armed with those important concepts, our Supreme Court emphasized "[T]he analysis should begin with the amount of support that would have been paid under the guidelines if no delay had occurred."  *Id.*  "This is an important starting point because the guideline amount is based on the usual needs of a child and the ability of parents to contribute to those needs under normal

circumstances." *Id.* "[T]he decision by the legislature not to use the guidelines to set past child support does not mean the guidelines become irrelevant." *Id.* Other surrounding circumstances, including the passage of time, may affect whether "it is equitable for a parent to pay an amount of past child support that is less than the total sum that should have been paid without the delay." *Id.*

Using that analysis, the district court correctly first determined the amount of support Steven would have paid if there had been no delay. The district court averaged the parties' incomes over the years 2009 (the child's birth) through 2017 concluding Steven should have paid $1703.23 per month for child support and $1258.43 per month for cash medical support.[5] To finish the analysis, the court made six deductions to that amount as requested by Steven, including the $50,000 in cash he paid directly. Even after considering the money Steven had given to Consuela throughout their relationship and deducting it from his past support obligation, the court concluded he should pay $63,557.45 in past child support. The court acknowledged it was imposing a relatively large back child support obligation, but noted Steven's net worth exceeded six million dollars and the amount was "fair and equitable to all parties."

On appeal, Consuela only challenges the court's decision to deduct $21,844.61—fifty percent of the child's dog bite personal injury settlement—from Steven's past child support obligation.[6] Steven argues that deduction prevents a

---

[5] The district court found Steven's average income for back support to be $302,024 per year. While Consuela's average income equaled $12,584, the court adopted the annual sum of $15,080 for the back support award.

[6] At trial, Consuela disputed most of the deductions to the court's child support award. To discredit Steven's payments, she showed documentation that she was in another state when he claimed he purchased gasoline for her vehicle at an Iowa

windfall to Consuela. At no point in his brief did he voice an objection to the formula utilized by the trial court in arriving at the past support obligation.

Iowa courts have considered the effect of children's assets on support obligations in other contexts.[7] For example, in *Hoak*, 364 N.W.2d at 191, the Iowa Supreme Court found it was error for the district court to order the children's assets, gifted to the children by their parents and grandparents under the Uniform Gifts to Minors Act, to be sold so that a trust could be created for their support rather than a parent paying child support.

Even considering the facts and circumstances of this case, reducing Steven's financial obligation to support his child by monies paid to the child for injuries he sustained cannot do equity to the central consideration—the best interests of the child. Here, the child received a personal injury settlement after suffering injuries from a dog bite. *See, e.g.*, *Sandholdt*, 519 N.W.2d at 418 (Donielson, C.J., concurring specially) ("The settlement was to replace what [the child] lost and to provide for anticipated future medical and insurance needs—not to replace the support her father has a duty to provide."). In the context of a

---

location, and she presented receipts for vehicle parts she bought that were similar to those Steven claimed he purchased for her.

[7] *See, e.g.*, *In re Marriage of Foley*, 501 N.W.2d 497, 499 (Iowa 1993) ("We do not find equitable concerns in this case that would justify granting [the stepfather who had adopted his stepchildren] an offset due to the children's social security benefits flowing from their deceased father's payment of taxes."); *In re Marriage of Hoak*, 364 N.W.2d 185, 191 (Iowa 1985) ("The parents have an obligation to support their children which is not mitigated by gifts to the children prior to the divorce. This case does not involve the wisdom of the exercise of the custodian's discretion to use the funds for support; rather, it presents the question of whether her exercise of discretion to not spend the funds should be overturned. We hold that her refusal should not be overruled."); *State ex rel. Tack v. Sandholdt*, 519 N.W.2d 414, 417 (Iowa Ct. App. 1994) ("Generally, a child's financial resources may be considered when determining a parents' obligation to pay college expenses.").

property settlement division in a divorce, proceeds from a personal injury settlement compensating bodily injuries belongs to the injured party but the court will consider those that were parties to the suit in deciding whether to divide the monies. *In re Marriage of McNerney*, 417 N.W.2d 205, 208 (Iowa 1987). Because Stephen was not a party to the suit and the monies relate to the child's injuries, the funds are not for support but for personal injury compensation. We see no reason to relate Stephen's support for his child to the injury funds.

While the mother, as conservator, decided to preserve these assets for the child by investing them in the mother's home, this money belongs to the minor child. Consuela intends to give the child the amount of the settlement funds when he reaches the age of majority. While Consuela is now receiving a benefit from having these funds invested into her home, so is the child. As conservator, Consuela will have to pay these funds to the child in the future, either by taking out a loan against her house or by selling the house. In child support cases "we strive to serve the best interests of the children." *Markey*, 705 N.W.2d at 22. With the best interests of the child at the forefront, we conclude the child's personal injury settlement should not reduce Steven's child support payments and we reverse the credit related to these settlement funds.

**B. Interest Rate.** The district court imposed a 4.54% interest rate, based on the constant maturity index rate plus two percent under Iowa Code section 668.13(3), rather than the ten percent rate in section 535.3(2). Consuela argues the district court should have imposed the ten-percent interest rate on Steven's

past child support and this interest rate should apply to the past due amount even if Steven makes his payments on time.[8]

Iowa Code section 535.3(2) provides, "Interest on periodic payments for child . . . support shall not accrue until thirty days after the payment becomes due and owing and shall accrue at a rate of ten percent per annum thereafter."

We conclude, based on the plain language of the statute, that the court should have imposed a ten percent interest rate. That said, this interest rate applies only if Steven should become more than thirty days delinquent on a monthly payment.

**C. Appellate Attorney Fees.** Consuela requests an award of appellate attorney fees. "An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial positions." *In re Marriage of Liebich*, 547 N.W.2d 844, 851 (Iowa Ct. App. 1996). We will "consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the district court's decision on appeal." *In re Marriage of Ales*, 592 N.W.2d 698, 704 (Iowa 1999). After considering Consuela's needs and ability to pay, we conclude Steven shall be responsible for Consuela's reasonable appellate attorney fees. We remand to the district court for calculation of these fees based on the affidavits of the parties.

---

[8] We note that after the determination by the district court of the past support obligation, Steven paid the ordered amount and Consuela filed a release and satisfaction of judgment, making the question of interest non-justiciable.

**IV. Disposition.**

For these reasons we affirm as modified the decision of the district court.

We remand for entry of a decree consistent with this opinion.

**AFFIRMED AS MODIFIED AND REMANDED.**

Tabor, P.J., concurs; Ahlers, J., partially dissents.

**AHLERS, Judge** (concurring in part and dissenting in part).

The district court used a model for determining back child support that started by calculating the total amount of child support that would have been owed using the child support guidelines from the child's birth to the time this action was filed. From that gross figure, the district court deducted the value of any payments the mother received from other sources that she would not have received if the father had been paying support (e.g., SSI payments received from the Social Security Administration), one-half of the proceeds of the child's personal injury settlement, and the value of any payments, goods, and services the father could prove he provided during the applicable period of time. If we were obligated to follow the model used by the district court, I would agree that one-half of the personal injury settlement should not have been deducted. However, we are not obligated to use that model. While use of that model may be appropriate in some cases, I do not believe it is equitable to do so under the facts of this case. Upon review of the circumstances of this case, without being bound to the model used by the district court, I find no error in the amount of back child support awarded by the district court. Therefore, I respectfully dissent on the issue of the amount of back child support.

Unlike an obligation for child support going forward, an obligation for back child support is permissive, not mandatory. *See* Iowa Code § 600B.25(1) (2016) ("The court *may* order the father to pay amounts the court deems appropriate for the past support and maintenance of the child . . . ." (emphasis added)); *Markey v. Carney*, 705 N.W.2d 13, 24 (Iowa 2005) ("[O]ur legislature *permits* the court to order a parent to pay an amount 'the court deems appropriate for the past support

and maintenance of the child.'" (emphasis added) (quoting Iowa Code § 600B.25(1))); *see also Agyepong-Yeboah v. Roeder*, No. 14-1882, 2015 WL 7575493, at *5 (Iowa Ct. App. Nov. 25, 2015) ("In this case, the court was not obligated to award any past child support to [the mother].").  The child support guidelines are not used to establish the amount of back child support.  *Markey*, 705 N.W.2d at 24.  Instead, the amount of support that would have been owed under the guidelines is used as a starting point followed by the court considering "the surrounding facts and circumstances" to determine the appropriate amount of back support.  *Id.*  It is consideration of those "surrounding facts and circumstances" that cause me to disagree with the model used by the district court and the majority.

Although we are guided by the principles set forth in *Markey*, *Markey* is factually distinguishable from this case.  *Id.* at 24.  In *Markey*, the mother became pregnant following the couple's one and only night of sexual intercourse.  *Id.* at 17.  Upon learning of the mother's pregnancy, the father distanced himself from the mother.  *Id.* at 18.  Thereafter, the father had no contact with the child or the mother and provided no support of any kind.  *Id.*  In spite of the fact that the father in *Markey* essentially abandoned the mother and the child entirely, the father was still ordered to pay less in back child support than would have been owed using the guidelines.[9]  *Id.* at 18.  In marked contrast, the parents in this case had a

---

[9] In *Markey*, the child was born in February 1997, and the mother filed the action seeking child support in November 2002, which is a period of time for which back child support could be ordered of sixty-nine months.  705 N.W.2d at 17.  The father's future child support obligation was set at $425.00 per month.  *Id.* at 18.  Using $425.00 per month, the father's back child support amount under the guidelines would have been $29,325.00 (69 months x $425.00 per month).  In spite

relationship before, during, and after the child's birth. That relationship continued for nine-and-one-half years in an "on again, off again" fashion. As noted by the district court, the couple's relationship remained "loving and intimate" during this entire time, and, even though the relationship had its ups and downs, it was "durable and close." These conclusions are supported by the record.

In addition to the ongoing nature of the relationship of the mother and father here, unlike the situation in *Markey*, the father provided substantial amounts of financial and other support. As found by the district court and supported by the record, the father provided a steady stream of cash to the mother during the course of the relationship, totaling approximately $50,000.00. In addition, the father provided the mother with a vehicle, provided gas for vehicles for the mother and her other children, purchased parts and materials for the mother's vehicles and house, purchased and repaired lawn care equipment, and provided repair and handyman services around the mother's home. These contributions by the father allowed the mother to maintain a house with a pool, extensively remodel her home, and take trips, most to all of which would have been outside the mother's means without the father's direct or indirect financial support.

The mother argues that the father cannot complain about back child support being ordered because the father could have avoided a back child support obligation by filing suit to establish his child support obligation at any time. While this is true, it is also true that the mother could have chosen to do the same thing.

---

of the father's complete lack of contact with or support of the child or mother, he was ordered to pay back child support in the much lower amount of $21,000.00. *Id*.

The fact that both parties had the option of filing suit during the course of their nine-and-one-half year relationship but neither did is compelling evidence that the relationship was satisfactory to both parties.[10]

However the relationship of the parties is characterized, the fact remains that both parties were consenting adults who found the relationship beneficial without the need to file suit to establish a child support obligation. For the mother to reap the benefits of that relationship and then, once the relationship ends, obtain a back child support award as if the relationship had not occurred does not strike me as equitable.

The record in this case does not support an award of back child support in an amount greater than that set by the district court. While I do not agree with the method used by the district court in calculating the back child support amount on the facts of this case, I find no error in the ultimate amount the district court ordered the father to pay. Therefore, I would affirm without modification on the issue of the

---

[10] The district court aptly noted the following regarding the mother's satisfaction with the financial arrangements of the relationship prior to filing suit:

> Given [the father's] obvious emotional attachment to [the mother] during the time frame, it seems logical that [the father] would want to give [the mother] money to help her meet her needs and living expenses. Conversely, if [the father] was not steadily supplying [the mother] with money, it seems logical that she would have sought court-ordered child support long before her child was half-grown. [The mother] claimed she never had enough money to obtain a lawyer, and that [the father] had discouraged her from doing so when they had arguments, threatening to seek custody of [the child]. However, [the mother] seemed savvy enough to understand that many lawyers would have gladly taken her case, given the extent of [the father's] assets. The Court concludes that ultimately [the mother] waited so long because the relationship, and the attendant financial benefits, were satisfactory to her for many years.

amount of back child support. Because I would affirm on that issue, I also dissent with regard to awarding the mother appellate attorney fees. I concur in the decision reached on the issue of the interest rate to be used on the back child support award.