**IN THE COURT OF APPEALS OF IOWA**

No. 21-1655
Filed June 15, 2022


**IN THE INTEREST OF S.M.,**
**Minor Child,**

**D.M.,**
      Petitioner-Appellee,

**L.D.,**
      Respondent-Appellant.
_____

**L.D.,**
      Petitioner-Appellant,

**vs.**

**D.M. and S.B.,**
      Respondents-Appellees.
_____

        Appeal from the Iowa District Court for Cerro Gordo County, Colleen D.

Weiland, Judge.


        In this consolidated appeal, a father challenges the dismissal of a petition

to overcome paternity and the termination of his parental rights.  **AFFIRMED.**


        Sarah A. Reindl of Reindl Law Firm, P.L.C., Mason City, for appellant.

        Megan R. Rosenberg of Cady & Rosenberg Law Firm, P.L.C., Hampton, for

appellee D.M.

        Vanessa L. Arzberger of Arzberger Law Office, Mason City, for appellee

S.B.

Mark A. Milder of Mark Milder Law Firm, Denver, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Tabor and Badding, JJ.

**BADDING, Judge.**

At the center of this case is S.M., a ten-year-old girl with two fathers vying for parental rights to her. Since she was born in 2011, S.M. has been raised by her mother, Sabrina, and by Derik, a man everyone believed was her father. But in 2019, genetic testing established that her biological father was instead a man named Landon. Since then, Landon has been battling Sabrina and Derik in an attempt to establish his parental rights to S.M. He lost that battle in October 2021, when the court terminated his parental rights and dismissed his petition to overcome Derik's paternity. Landon appeals.

**I.     Background Facts and Proceedings**

Sabrina and Derik began dating in May 2010. They separated for about a month in November 2010. During their break, Sabrina had a one-time sexual encounter with Landon, an acquaintance from high school. Sabrina got back together with Derik and then learned she was pregnant. She had S.M. in August 2011. According to Sabrina, she "had no inkling that Landon could be [S.M.'s] father." That is until September 2017, when Sabrina became aware of a Facebook dispute between her cousin and Landon's girlfriend at the time. In those posts, the girlfriend says Landon was "lied to" "[a]nd the child is the victim," insinuating that Landon was S.M.'s father. Landon was aware of the posts but didn't give them much credence.[1]

---

[1] Landon repeatedly testified this Facebook dispute occurred in December 2017. But the posts, which were admitted as an exhibit, showed the discussion happened in September of that year.

Sabrina, however, sat Derik down and told him about Landon. By then, Sabrina and Derik's relationship was over. They had reached a custody agreement in 2016 for S.M. and their younger daughter, M.M. That agreement, which placed the two children in their joint legal custody and physical care, survived two modification attempts by Sabrina, the last of which was filed in December 2018. As a result, S.M. and her sister M.M. split their time equally between Derik and Sabrina's homes.

Despite hearing rumblings that he might be S.M.'s father in September 2017, Landon made what the district court characterized as only "half-hearted attempts" to find Sabrina in the ensuing years. Landon blamed this in part on a series of medical issues he endured during that time, some of which resulted in his hospitalization.[2] He also said that after his girlfriend's posts, Sabrina blocked him on Facebook. Sabrina disputed this.[3] In any event, Landon said that he finally came across Sabrina on Facebook in April 2019 under her married name. He reached out to her and arranged a meeting with S.M. Though Sabrina denied it at trial, she initially encouraged Landon's contact with S.M., at least until August when she inexplicably stopped responding to Landon's messages.

---

[2] At the end of 2017, Landon fell on ice and broke two ribs. Then in July 2018, he fell off a ladder and broke his shoulder. In January 2019, he had a "life-threatening skin infection" called necrotizing fasciitis in his leg. He was hospitalized for several days and underwent skin graft surgery at the end of February. In June, he was hospitalized for several weeks with pancreatitis.

[3] Sabrina testified that she did not block Landon until he started the legal actions to establish his paternity in 2019. Before then, she said that her Facebook page was open to Landon. She noted that he wished her happy birthday on Facebook in 2017 and that she "loved" one of his posts in 2018. Sabrina also pointed out that they shared mutual friends, which should have assisted Landon in finding her.

In October, Landon moved to intervene in Sabrina's custody modification with Derik. When that motion was denied, Landon filed a petition to overcome Derik's paternity in November. Genetic testing took place the following month and confirmed that Landon is the child's biological father. In February 2020, Sabrina, Derik, and Landon agreed to a visitation schedule between Landon and S.M., which was confirmed on the record by the court and incorporated into an order. But Sabrina immediately contested the order, and it was vacated in June 2020. After the order was vacated, Derik continued to allow contact between Landon and S.M., but Sabrina did not.

Trial on the petition to overcome paternity was held in January 2021, but the case was stayed by interim order in February. In that order, the district court noted that although Derik was seeking to preserve his paternity, he had not filed a petition to terminate Landon's parental rights as required by Iowa Code section 600B.41A(6)(a)(3) (2021). The court gave Derik until April to file a termination petition. He did so at the end of March. The termination case proceeded to trial, following which the district court terminated Landon's parental rights and dismissed the petition to overcome Derik's paternity.

## II.     Standard of Review

Petitions to terminate parental rights pursuant to Iowa Code section 600A are reviewed de novo. *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). "Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses." *Id.* (quoting *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998)).

Petitions to overcome paternity are reviewed for correction of errors at law. *Dye v. Geiger*, 554 N.W.2d 538, 539 (Iowa 1996). "[W]e are bound by the district court's factual findings that are supported by substantial evidence." *Id.*

## III. Discussion

### A. Termination of Parental Rights

Private terminations of parental rights pursuant to chapter 600A are a two-step process. *B.H.A.*, 938 N.W.2d at 232. First, the parent seeking termination must prove one of the grounds for termination set forth in section 600A.8. *Id.* Second, termination must be in the best interests of the child. *Id.* The petitioning party must prove both steps by clear and convincing evidence. *Id.*

Derik relied on the ground of abandonment in seeking to terminate Landon's parental rights.

> "To abandon a minor child" means that a parent, putative father, custodian, or guardian rejects the duties imposed by the parent-child relationship, guardianship, or custodianship, which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child.

Iowa Code § 600A.2(20). For a child who is S.M.'s age, section 600A.8(3)(b) specifies that

> a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
>> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
>> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.

Iowa Code § 600A.8(3)(b).[4]

Landon argues that he did not abandon S.M. because until December 2017, he "had no reason whatsoever to believe that [Sabrina] gave birth to his child." Once he was made aware, Landon asserts that he visited and communicated with S.M. in compliance with section 600A.8(3)(b)(1) and (2).[5] The district court agreed that for the

> period *after* April 2019, [Landon] has *not* abandoned this child. He did have meaningful contact with her for part of 2019. And after the short honeymoon period when [Sabrina] welcomed his paternal advancements, [Landon] has taken extraordinary measures and has relentlessly battled a reluctant [Derik], an intransigent [Sabrina], and an unyielding court to establish a relationship with [S.M.]

But the court held Landon's absence for the "first seven-and-a-half years of [the child's] life" was abandonment within the meaning of the statute.

Landon challenges this conclusion, arguing that our supreme court has held it would be "totally unrealistic" for a prospective father to "become involved in the pregnancy on the mere speculation that he might be the father because he was one of the men having sexual relations with [the mother] at the time in question."

---

[4] There is a third option for abandonment that is not at issue here—openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing. *See* Iowa Code 600A.8(3)(b)(3).

[5] Landon also asserts that he contributed toward S.M.'s support by making monthly payments of $75.00 each to Sabrina and Derik starting in July 2020. But because we find he failed to meet the contact requirements of section 600A.8(3)(b)(1) or (2), we need not decide whether his belated efforts to provide financial support for S.M. were sufficient to avoid termination. *See, e.g.*, *In re G.D.*, No. 20-0984, 2021 WL 2126174, at *3 (Iowa Ct. App. May 26, 2021) ("For a parent to avoid being deemed to have abandoned the child, the parent must meet *both* the cash and contact components of the statute. So a petitioner need only prove by clear and convincing evidence that the parent failed to meet one of the two components, cash or contact, to establish the parent abandoned the child.").

*In re B.G.C.*, 496 N.W.2d 239, 241 (Iowa 1992). Unlike Landon, however, the father in *B.G.C.* did not delay in asserting his parental rights—he met with an attorney "ten days after he learned that the mother thought he was the father" of a newborn baby she had placed for adoption. *Id.* at 246; *accord In re B.G.S.*, No. 07-1734, 2008 WL 2520544, at *3 (Iowa Ct. App. June 25, 2008) (finding a father had not abandoned an infant placed for adoption when he contacted his attorney and made arrangements for a paternity test once he learned the mother was pregnant and the child might be his). In contrast, Landon waited a year and half after learning that he might be S.M.'s father before making contact with Sabrina.

Landon's delay in asserting his rights makes this case more like *In re M.M.S.*, where the supreme court held a father "must be charged with some sense of involvement on the basis of his encounter with [the mother] and his knowledge of her pregnancy that followed, even notwithstanding rumors of another father." 502 N.W.2d 4, 7 (Iowa 1993) (holding father had abandoned his child where, after learning of his possible fatherhood, he responded by denying paternity and initially avoiding genetic testing); *accord In re A.C.W.*, No. 18-0287, 2018 WL 4923172, at *3 (Iowa Ct. App. Oct. 10, 2018) (finding father's failure to try to establish his paternity for more than a year after he learned that he might be the father was sufficient to establish abandonment). As the district court found, Landon's knowledge of S.M.'s birth nine months after his encounter with Sabrina "was his 'heads-up.'" Armed with that knowledge, we agree with the court that Landon became "fully on notice" of his paternity in September 2017 based on the rumors that were swirling around Facebook.

Landon blames his delay in acting on those rumors on his inability to find Sabrina and illnesses in 2018 and 2019. But as Sabrina points out, she and Landon were friends on Facebook after S.M. was born. Though Landon claims Sabrina blocked him after the paternity rumors started, they had mutual friends. In fact, Landon's girlfriend at the time was in contact with Sabrina's cousin and worked with her grandmother. And while Landon certainly had health issues prior to his first meeting with the child in April 2019, they were not incapacitating. Indeed, when Landon was recovering from his broken ribs and shoulder in 2018, his mother said that he was mostly watching television and "on his phone." Even his eventual location of Sabrina in April 2019 seemed to happen more by chance than through any real effort from Landon.

We agree with the district court that a parent must make more than these half-hearted efforts to engage with a child. *See In re B.B.E.*, No. 15-0930, 2016 WL 541346, at *4 (Iowa Ct. App. Feb. 10, 2016) ("Demonstrating a commitment to a child requires more than pecking away at one's phone every once in a while and then giving up when no response is received."). "An abandoned child is no less abandoned because the parent can rationalize a reason for the abandonment." *M.M.S.*, 502 N.W.2d at 7; *see also* Iowa Code § 600A.8(3)(c) (stating a parent's "subjective intent . . . does not preclude a determination that the parent has abandoned the child"). On our review of the record, we find Landon abandoned the child pursuant to section 600A.8(3)(b).

We must next consider whether termination of Landon's parental rights is in the child's best interests. *B.H.A.*, 938 N.W.2d at 232. Chapter 600A borrows the best-interests framework of chapter 232, which emphasizes the child's safety and

physical, mental, and emotional health. *Id.* We also consider whether a parent has "affirmatively assume[d] the duties encompassed by the role of being a parent." Iowa Code § 600A.1(2). This requires us to consider "the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life." *Id.*

Landon has tried to establish and maintain a place of importance in S.M.'s life since their first meeting in April 2019. But Derik is the only father she has ever known. While S.M.'s early reactions to Landon's presence in her life were positive, as these proceedings dragged on, she began to experience panic attacks, nervous tics, and anxiety about visits with Landon. Derik explained, "[I]t's been a huge, emotional roller coaster for a little girl" and a "really hard thing . . . for her to grasp," which he says has caused her to question her identity and self-worth. According to Derik, S.M. is "worried that everything that she's known" will be "ripped away from her." We agree with the district court that "[w]hatever benefit might come from establishing a parent-child relationship with [Landon] would be significantly outweighed by the loss of severing her relationship with [Derik]." *Accord A.C.W.*, 2018 WL 4923172, at *4. Termination of Landon's parental rights is in the child's best interests.

**B.** **Petition to Overcome Paternity**

This leaves us with Landon's petition to overcome Derik's paternity.[6] The district court found the conditions required by Iowa Code section 600B.41A(3) (2019) to overcome paternity had been established.[7] But because Derik requested that his paternity be preserved, the court considered whether Landon's petition should nevertheless be dismissed. *See* Iowa Code § 600B.41(6)(a)(1). To preserve Derik's paternity in the face of test results excluding him as S.M.'s biological father, the court was required to find "that it is in the best interest of the child to preserve paternity."[8] *Id.* § 600B.41(6)(a)(2). On this question, the statute instructs that we consider:

> (a) The age of the child.
> (b) The length of time since the establishment of paternity.
> (c) The previous relationship between the child and the established father, including but not limited to the duration and frequency of any time periods during which the child and established father resided in the same household or engaged in a parent-child relationship as defined in section 600A.2.
> (d) The possibility that the child could benefit by establishing the child's actual paternity.
> (e) Additional factors which the court determines are relevant to the individual situation.

---

[6] Landon initially claims that the district court erred in vacating the consent visitation order and then staying the paternity proceedings so that Derik could pursue termination of Landon's parental rights. However, Landon did not appeal those interlocutory orders. We accordingly confine our analysis to the denial of his petition to overcome Derik's legally established paternity.

[7] Those conditions include (1) filing an action before the child reaches majority; (2) naming the interested parties to the action and plainly stating the grounds for relief; (3) providing notice to interested parties; (4) appointing a guardian ad litem for the child; (5) genetic testing; and (6) expert evidence based on that genetic testing that shows the established father is not the biological father.

[8] The statute also required that Derik "request[] that paternity be preserved and that the parent-child relationship . . . be continued" and petition "the court for termination of the biological father's parental rights and the court grants the petition pursuant to chapter 600A." Iowa Code § 600B.41A(6)(10, (3). These conditions have been met.

*Id.*

S.M. knew only Derik as her father until she was seven-and-a-half years old. She resided with Sabrina and Derik from the time she was born until they separated in 2015. Since then, she has split her time between their homes. S.M. has a significant bond with her siblings at Derik's house. She also shares a strong bond with his parents. Derik's mother has provided daycare for S.M. since she was born, and Derik's father was described as the child's best friend. We acknowledge that S.M. could eventually experience some benefit by establishing a relationship with Landon, but to date, that benefit has been minimal.

Derik testified that he will continue to provide time and space for S.M.'s relationship with Landon, explaining he doesn't "want to stand in her way of her relationship with her biological father. . . . [H]e's not going nowhere. I'm not going nowhere. . . . [I]t's time to kind of get along and do what's right for these kids." Throughout these proceedings, Derik has repeatedly demonstrated his ability to maintain contact with Landon while also providing support and stability for S.M. as their relationship grows. We have no reason to believe that would change in the future because, as Derik testified at trial, "it is not about us. It's about [S.M.]" Based on our review of the record, we agree with the district court that the petition to overcome Derik's paternity should be dismissed.

**C. Appellate Attorney Fees**

Both Sabrina and Derik request an award of appellate attorney fees. Assuming without deciding that such an award may be made in this case, *see In re Fiscus*, 819 N.W.2d 420, 423–24 (Iowa Ct. App. July 11, 2012), we deny their

requests given that Landon's sole source of income is social security disability benefits. *See Markey v. Carney*, 705 N.W.2d 13, 26 (Iowa 2005) (considering the "needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal" (citation omitted)).

## IV.    Conclusion

We find Derik proved by clear and convincing evidence that Landon abandoned the child pursuant to Iowa Code section 600A.8(3)(b) and that it is in her best interests to terminate his parental rights. We further find that Landon's petition to overcome Derik's paternity should be dismissed pursuant to section 600B.41A(6)(a). No appellate attorney fees are awarded.

**AFFIRMED.**