# IN THE COURT OF APPEALS OF IOWA

No. 25-2211
Filed March 11, 2026

**In the Interest of E.S., Minor Child,**

**T.S., Father,**
Appellant.

Appeal from the Iowa District Court for Clinton County,
The Honorable Kimberly K. Shepherd, Judge.

**AFFIRMED**

Sara D. Davenport of Schoenthaler, Kahler, Reicks & Petersen, Maquoketa,
attorney for appellant father.

Brenna Bird, Attorney General, and Dion D. Trowers, Assistant Attorney
General, attorneys for appellee State.

Taryn R. McCarthy of Clemens, Walters, Conlon, Runde & Hiatt, L.L.P.,
Dubuque, attorney and guardian ad litem for minor child.

Considered without oral argument
by Greer, P.J., and Schumacher and Chicchelly, JJ.
Opinion by Greer, P.J.

**GREER, Presiding Judge.**

A disestablished father, T.S., seeks to have the juvenile court's order overcoming paternity overturned.  On appeal, T.S. argues that the court abused its discretion and did not consider factors outlined in Iowa Code sections 232.3A and 600B.41A(7) (2025) in disestablishing him as the child's father.  Further, he argues the ruling was not in the child's best interests.

## I.  Background Facts and Proceedings.

E.S. was born in October 2021.  T.S. signed a paternity affidavit stating that he was the child's legal father, and he was listed as the child's father on the birth certificate.

In November 2024, the child came to the Iowa Department of Health and Human Services' (HHS) attention due to substance-use allegations against the mother.  After a child-in-need-of-assistance (CINA) petition was filed, the child was removed from the mother's care and was placed with his maternal grandmother in December 2024.[1]  At the time, T.S. was incarcerated for assault charges against the child's mother.  For most of the time of the child's removal, T.S. was incarcerated, but when he was not incarcerated, he exercised supervised visits with the child and the child's older sibling.[2]  The child was adjudicated a CINA in July 2025.

In the spring, the mother shared with HHS that T.S. was not the child's biological father.  In October, the State produced a genetic test report confirming that T.S. was not the child's biological father.  The State then

---

[1] At the time of the disestablishment hearing, the child was still in the care of the maternal grandmother.

[2] T.S. is the biological father of the older sibling.

moved to disestablish paternity along with an amended CINA petition.[3]  At the December hearing to overcome paternity, the child's guardian ad litem (GAL) stated that disestablishing T.S. would be in the child's best interests. Over T.S.'s objection, the juvenile court granted the State's motion to disestablish paternity.  T.S. appeals.

## II.  Error Preservation.

The State contends that T.S. failed to preserve error on his argument that disestablishment was not in the child's best interests.  To preserve error for appellate review an issue must have been both presented to the district court and ruled on.  *In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003).  At the hearing, T.S.'s attorney argued that T.S. and child had an ongoing father-son relationship.  The GAL testified that the relationship was not in the child's best interests.  Following arguments at the hearing, the juvenile court granted the request to disestablish paternity "[b]ased on the results of the paternity testing."  Later, the juvenile court's order overcoming paternity stated that it was "in the best interests of the child to overcome [T.S.]'s paternity for reasons stated on the record, including the objection of the [GAL] to an ongoing relationship between [T.S.] and the child."  On this record, we find error was preserved, and so we proceed to the merits of T.S.'s appeal.

## III.  Standard of Review.

Our review of proceedings to overcome paternity is for correction of legal error.  *Dye v. Geiger*, 554 N.W.2d 538, 539 (Iowa 1996).  "[W]e are bound

---

[3] *See Callender v. Skiles*, 591 N.W.2d 182, 185 (Iowa 1999) (Iowa Code 600B.41A anticipated enforcement proceedings could be initiated by the mother, or other interested person, or state authorities).

by the [juvenile] court's factual findings that are supported by substantial evidence." *Id.*

### IV. Analysis.

On appeal, T.S. argues that the juvenile court erred in disestablishing his paternity by failing to (1) follow the requirements under Iowa Code section 232.3A and (2) consider the factors in Iowa Code section 600B.41A(7). On this issue in the order, the juvenile court simply put that: "[T.S.] objects to having his paternity overcome but the Court finds that it is in the best interests of the child to overcome [T.S.]'s paternity for reasons stated on the record, including the objection of the [GAL] to an ongoing relationship between [T.S.] and the child."

Pointing to the limited analysis found in the ruling, T.S. contends the juvenile court failed to conduct a proper inquiry and that the record supports preserving his paternity. *See Dye*, 554 N.W.2d at 539 (addressing the statutory analysis that "permits a father whose paternity has been legally established . . . to overcome that legal presumption when genetic testing indicates he is not the biological father."). Under section 232.3A a "juvenile court may enter an order overcoming paternity of an established father pursuant to section 600B.41A" when the following conditions have been satisfied:

> a. The child has been adjudicated a child in need of assistance in an active juvenile court case and a dispositional order in that case is in place.
>
> b. Paternity of the child has been legally established, including by one of the methods enumerated in section 252A.3, subsection 10, or by operation of law due to the established father's marriage to the mother at the time of conception, birth, or at any time during the period between conception and the birth of the child.

4

c. Pursuant to section 600B.41, the conclusion of the expert as disclosed by the evidence based upon blood or genetic testing demonstrates that the established father is not the biological father of the child.

d. The established father agrees that the established father's paternity should be overcome or the established father objects to having his paternity overcome but the court finds that it is in the best interest of the child to overcome the established father's paternity.

Iowa Code section 232.3A(2).

T.S. only challenges the last condition, that overcoming his paternity was in the child's best interests. But to consider if it is in the best interests of the child to preserve the paternity of the established father, we consider factors set out in Iowa Code section 600B.41A(7)(a)(2):

(a) The age of the child.

(b) The length of time since the establishment of paternity.

(c) The previous relationship between the child and the established father, including but not limited to the duration and frequency of any time periods during which the child and established father resided in the same household or engaged in a parent-child relationship as defined in section 600A.2.

(d) The possibility that the child could benefit by establishing the child's actual paternity.

(e) Additional factors which the court determines are relevant to the individual situation.

At the time of the hearing the child was four years old. On appeal, T.S. highlights an HHS report noting that he acted appropriately with the child. But, during that same interaction two concerns were observed about T.S.'s behavior. The Family-Centered Services (FCS) worker who supervised the interaction found that T.S. was "giving the children false hope in regards to

5

the speed of interactions and being returned to his care." Additionally, that he advised "others to not have children, in front of" the children, and the FCS worker was concerned that "this may cause emotional or mental harm."

Likewise, at the hearing, the GAL voiced concerns about ongoing visitation with T.S. because of behaviors the child was exhibiting that were presumed to stem from T.S. and the violence that the child had witnessed in the past. The GAL noted that the child had suffered "significant trauma" from witnessing T.S.'s behaviors and thus, discontinuing visits was in the child's best interests. The maternal grandmother also reported the child showed negative emotional and behavioral responses following visits with T.S. She also was concerned that the child often described incidents of domestic violence the child witnessed with T.S. as the perpetrator.

As for the domestic violence concerns, the child was diagnosed with posttraumatic stress disorder due to witnessing years of violence between T.S. and his mother. The child drew T.S. hurting his mother with a sad face, and he acted out a scene when he had witnessed T.S. "slicing a man in the neck with a knife." The child has also had other behavioral outbursts related to T.S. that are being addressed through weekly therapy. And although there was a no-contact order between T.S. and the mother, there were reports the two remained in communication.

To support his position, T.S. noted that the child and he had a father-son bond and the biological father was not yet able to even visit the child. While that was true, the relationship with the biological father, standing alone, is not determinative of the best interests of the child related to the relationship with T.S. As to the relationship with the biological father, the child's therapist recommended that the biological father send a letter and only proceed with interactions when the child is "ready." The child is aware

6

of who his biological father is but the two do not yet share a bond. Although the biological father is currently incarcerated, there is a possibility that the child could benefit by establishing actual paternity as his biological father has expressed interest in building a relationship with the child and expressed a willingness to share letters and build up to video visits with the child. While we do not know how that relationship may play out with the biological father, there remains substantial evidence that it is in the best interests of the child to overcome paternity of T.S.

Based on our review of the record, we find no error of law in the juvenile court's analysis and thus, find that that T.S.'s paternity should be disestablished to serve the child's best interests.

## V. Conclusion.

Because disestablishing T.S.'s paternity was in the child's best interests, we affirm.

**AFFIRMED.**